Peck, J.,
delivered the opinion of the court:
The claimants, by the first count of their petition, represent that on the 4th day of May, A. D. 1863, being the owners of the steam-vessel called the M. S. Allison, they entered into a charter-party with the defendant, on which day the said vessel, by force of and under the said charter-party, entered into the service of the defendant, and so continued in service until the 15th day of July, A. D. 1865, and faithfully performed all that the said charter-party required of her.
That the claimants were to have been paid a per diem of $110 for the use of said vessel for the time she should continue in said service.
That without the consent of the claimants, and to their great *362 wrong and injury, while the said charter-party was in full force and effect, the Q u a r t er m a s te r- Ge d e r al, or one of his assistants, arbitrarily reduced the compensation agreed to be paid from $110 to $90 per day, the said reduction to take effect on the 4th day of October, in the same year; and that the said last-named rate of payment was, by order of Major-General Butler, further reduced from $90 to $80 per day, the last-named rate to take effect on the 15th day of January, A. D. 1864.
That by reason of the said reductions the claimants were deprived of the lawful gains assured to them by the conditions and terms of the said charter-party of the sum of $18,300, for which they ask judgment.
The answer of the defendants to these allegations is simply this, that the claimants accepted payments from time to time of the defendants for the services of the said vessel upon accounts stated, in which the number of days, covering all the days of service, and the price allowed therefor, were precisely named, aud gave receipts upon each of the same “ in full of the above account,” which it is contended releases the defendants from all further claims and demand for the rendition of such services.
However repugnant to justice and good faith this defense may be, and however repugnant to well-recognized legal principles as they formerly existed, it must now be admitted that recent authority is against the claimants, and that such receipts as they gave for the-money paid them will preclude any further recovery for their benefit.
There is not anything to show that the claimants did nut acquiesce in the reductions insisted upon by the defendants, except that when they were notified, in January, 1864, that the daily rate to be paid them would be reduced to $80, the captain in command of the vessel stated to the messenger who brought the written notice to him of such intended reduction that the owners would not accept such reduction, and wished the vessel discharged from service, and that they did not, as requested by the written notice, present the charter-party to the quartermaster that such reduction might be indorsed thereon. It does not appear that any objection whatever was made against the reduction of the per-diem allowance to $90.
All the accounts stated for which receipts in full were given had upon their face the statement that they were under the charter made May 14,1863.
*363 We have to follow the decisions heretofore made in cases presenting similar facts, and decide that the claimants have been paid in full for the cause of action set out in their first count. No evidence of duress is given. The reference to the charter on the face of the accounts receipted for may be understood as notices to the claimants that the defendants intended the payments to be in satisfaction of the obligations assumed under the charter, and so named it, that they might be forewarned that no more v ould be paid to them for the services of their vessel at any time. ■ Submitting to this as they did, without making immediate complaint, they must- submit for all time.
The counsel for claimants strenuously insisted in argument that they should at least recover at the higher rate for the days which their steamer had been employed prior to the service of the notice dated the 21st of January, which then announced that a reduction would be made to take effect from the 15th of that month, because, as they alleged, under no circumstances could a reduction arbitrarily be made retroactively.
However reasonable that supposition might have been, as consonant with justice, it cannot now be recognized as law, for the Supreme Court has decided otherwise. See 13 Wall. R., 35, where this question was directly presented for the eonsideraton of the Supreme Court. See also Martin v. United States, 5 C. Cls. R., 216.
The second count of claimants’ petition is founded upon the assumption that their vessel,' during the continuance of the charter-party, on or about the 22d day of January, 1865, was ordered by the defendant to proceed up the Chowan River, in North Carolina, with troops, arms, &c., which it alleged was an extra-hazardous and dangerous service, coming within the “ war-risk” named in the charter-party.
That on that trip the vessel became injured and leaky, and while being repaired by the defendants she was ont-of service for one hundred and seventeen and one-half days, for which lost time the defendants refuse to make any compensation. No facts are found to show that the navigation of the Chowan River was extra-hazardous,or dangerous.
It is true the steamer received an injury in her hull while on this trip which caused her to leak, and which rendered it necessary^ she should be repaired, and we are requested to find that the injury was caused by some obstruction placed in the river *364 by rebels, but sufficient evidence to convince ns of that fact has not been placed in the record. It was the business of the claimants to keep their vessel tight, stanch, strong, and well and sufficiently manned, &c.; if they did not do so, they should not expect the defendants to pay them for their omission, and were unusually fortunate that defendants voluntarily repaired their vessel for them. The vessel did not, so far as we can ascertain, encounter any “ war-risk.” See White's Case, 11 C. Cls. R., 578, which was in its charter-obligations, in this regard, the twin of this. (Leary v. United States, 14 Wall. R., 607.)
That the pilot was placed on the steamer for this trip by the harbor-master acting at New Berne for the defendants does not involve the defendant in liability for the injury to the vessel, since it does not in any way appear that the pilot was either unskillful or negligent, or that he in any manner mismanaged the vessel.
The claimants cannot recover on the case made, and their petition is dismissed.